## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

ALBERTO JAVIER BANCHERO,

    Plaintiff,

vs.

CAFE INTERNATIONAL HOLDING COMPANY, LLC
d/b/a IT! Italy Ristorante & Cafe & Bar
and HUGO BIANCHI, individually,

    Defendants.
_____/

## COMPLAINT

Plaintiff, ALBERTO JAVIER BANCHERO, ("BANCHERO"), by and through his undersigned counsel, hereby, files this, his Complaint against Defendants, CAFE INTERNATIONAL HOLDING COMPANY, LLC d/b/a IT! Italy Ristorante & Cafe & Bar (hereinafter "IT!") and HUGO BIANCHI, individually, ("BIANCHI"), collectively, ("Defendants") and alleges as follows:

## INTRODUCTION

1. This is a proceeding for monetary damages to redress the deprivation of rights secured to Plaintiff by the minimum wage and maximum hour provisions of Section 6 and 7 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, ("FLSA"), as well as the minimum wage provisions of the Florida Minimum Wage Act, ("FMWA"). Additionally, Plaintiff brings claims of retaliation pursuant to 29 U.S.C. §215(a)(3).

1

## JURISDICTION

2. The jurisdiction of the Court over this controversy is based upon 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

## VENUE

3. The venue of this Court over this controversy is based upon the following:

a. The unlawful employment practices alleged below occurred and/or were committed within Broward County, Florida. Accordingly, venue lies in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b);

b. Defendant, CAFE INTERNATIONAL HOLDING COMPANY, LLC d/b/a IT Italy was and continue to be organized under the laws of the State of Florida doing business as IT! Italy Restaurant located at 500 E Las Olas Blvd #200, Fort Lauderdale, FL 33301 within this judicial district; and

c. Defendant, BIANCHI, was and continues to be a resident of Buenos Aires, Argentina and of Miami Dade County residing at 3029 NE 188th St, Aventura, FL 33180. Additionally, Defendant, BIANCHI, was and continues to be an officer of CAFE INTERNATIONAL HOLDING COMPANY, LLC.

## PARTIES

4. At all times material hereto, Plaintiff was and continue to be a resident of Broward County, Florida.

5. Defendant, IT!, operate the restaurant IT! Italy Restaurant on Las Olas Blvd. in Fort Lauderdale, Florida.

6. Defendant, BIANCHI, is the owner of Defendant, IT!, who manages the day-to-day operations of the Restaurant including the method of remuneration of the Restaurant's employees.

7. At all times material hereto, Defendants, jointly and severally, were Plaintiff's direct employer, joint employers, and co-employers for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. §203 (d).

8. At all times material hereto, Plaintiff, was an "employee" of Defendants within the meaning of the FLSA and the FMWA.

9. At all times material hereto, Defendants, were the employer or former employer of Plaintiff.

10. At all times material hereto, Defendant, IT!, was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

11. At all times material hereto, Defendants regularly owned and operated a business engaged in commerce as defined in § 3(r) and 3(s) of the FLSA, 29 U.S.C. §203(r) and § 203(s).

12. At all times material hereto, annual gross revenue of Defendants was in excess of $500,000.00 per annum during the relevant time periods.

13. At all times material hereto, Defendants, IT!, purchase goods that have been transported from across state lines of other states and internationally.

14. At all times material hereto, Plaintiff's work for Defendants was actually in or so closely related to the movement of commerce while he worked for Defendants that the Fair Labor Standards Act applies to Plaintiff's work for Defendants.

15. At all times material hereto, the work performed by the Plaintiff, was directly essential to the business performed by the Defendants.

16. At all times material hereto, Plaintiff was "engaged in commerce" within the meaning of the FLSA.

## STATEMENT OF FACTS

17. Plaintiff, Banchero, was hired as a Bartender at IT! from December 2019 and worked up through April 4, 2022.  In addition,  Plaintiff was given managerial duties but was never compensated on a salaried basis. Aside from his bartending duties where Plaintiff worked for a reduced hourly rate as if the Defendants were properly taking a tip credit,  he was expected to perform various managerial and administrative duties, including handling the personal items for the owner, Bianchi, without compensation.

18. Though Defendants have taken a tip credit of $ 3.02 per hour towards Plaintiff's, Banchero, hourly wages as a bartender, the evidence is clear that that the Defendants used an illegal tip pool. More specifically,  the Defendants would bring in staff from Argentina without work permits or work visas to work in the capacity of the Executive Chef, Sous Chef, Line Chef, bar backs, food runners, drink runners, cleaning crew, hostesses and hosts, and other front and back of the house positions including general manager.  Because these workers were working illegally,  the Defendants would take a percentage of all of the tipped employee's tips and use them to pay the back of the house employees including managers or other nontraditionally tipped positions.   For

example, the Executive Chef and his staff who were and continue to be undocumented aliens were all paid in cash with the tips deducted from Plaintiff and similarly situated tipped employees. In fact, some of the undocumented workers who were paid in cash were required to kick back 12% of their pay to the restaurant for the privilege of working there and being paid under the table.

19. Further, during the relevant time period, the Defendants would routinely make deductions from the Plaintiff, and other tipped employees, paycheck indiscriminately for voids and walk outs and

20. As a result of the company's illegal tip pool, Plaintiff, Banchero was underpaid $ 3.02 for each hour worked in violation of the Florida Minimum Wage Act and the FLSA.

21. Because the FLSA requires, as a condition precedent, that the specified reduced cash wage be paid for every hour worked and because that condition was not met, the "tip credit" allowed by the FLSA is unavailing. The Defendants are therefore obligated to pay the Plaintiff's' full minimum wage for each hour worked allowing credit for the hours paid for. This underpayment of the applicable Florida minimum wage constitutes a minimum wage violation pursuant to the Fair Labor Standards Act and the FMWA/Florida Constitution.

22. Defendants began to deduct a percentage of Plaintiff's, and other similarly situated tipped employees in 2021 for the unlawful payment of back of the house and undocumented employees. In 2021, Plaintiff worked approximately 740 hours where he was paid a sub-minimum wage. Additionally, in 2022, Plaintiff worked approximately 300 hours where he was paid a sub-minimum wage.

5

23. Accordingly, upon information and belief, Plaintiff was underpaid by 1,040 hours (740 + 300) resulting in an underpayment to Plaintiff of $ 3,140.80 plus an equal amount as liquidated damages totaling **$ 6,281.60.**

24. During the relevant time period, from June 2020 through March 31, 2022, Plaintiff worked approximately 32 hours on the clock performing bartending duties. In addition to the on-the-clock hours, from June 2020 through March 31, 2022, Plaintiff routinely worked off-the-clock on an average of 12 hours per week.

25. Because the Defendant, BIANCHI, was based in Argentina and monitored the Fort Lauderdale restaurant's operation, including via video and audio surveillance, he would constantly send WhatsApp messages to Plaintiff to perform off-the-clock work such as ordering inventory, going to the storage unit at least 3 times a week to deliver and pick up supplies for the restaurant, pick up restaurant supplies and other supplies at place like Home Depot, picking up ice at local stores when the ice machine would break down, to pick up lighting and audio equipment for the restaurant, pick up food when supplies were low, pick up decorations for holidays, to deliver and pick up furniture when repairs were needed, engaging in promotions by going to hotels to speak with concierges and front office staff, delivering flyers, and coordinating with photographers and videographers and models for restaurant promotions. Further, Defendant, BIANCHI, would have Plaintiff perform personal errands for him such as taking his vehicles for service. Plaintiff was expected to perform all of the above duties without compensation. These services were clearly business related as Plaintiff was given a company credit card to pay for these items.

26. At all times material hereto, Plaintiff fully performed his obligations as an employee of the Defendants.

27. At all times material hereto, Defendants' acts and/or omissions giving rise to this action were not in good faith and at no time did Defendants have reasonable grounds for believing that their acts and/or omissions were not a violation of the FLSA. In fact, the Defendants had been sued on multiple occasions for similar violations of the FLSA and the FMWA.

28. Because the Plaintiff was underpaid in his regular hourly rate due to the unlawful tip credit, he was additionally underpaid for those weeks that he worked overtime hours in excess of forty per week given the number of hours he was forced to work off the clock.

29. In 2020, as a result of Plaintiff's off-the-clock work, he is owed the following wages and overtime:

    a. Regular Unpaid Minimum Wages: $ 1,780.48 [26 weeks x $ 8.56[1] x  8 off the clock hours]

    b. Overtime Hours:   $ 1,335.36 [26 weeks x $ 8.56 x 4 overtime hours x 1.5]

30. In 2021, as a result of Plaintiff's off-the-clock work, he is owed the following wages and overtime:

    a. Regular Unpaid Minimum Wages:   $ 2,491.20 [36 weeks x $8.65 x 8 otc hours];

    b. Regular Unpaid Minimum Wages:    $ 1,280.00 [16 weeks x $ 10 x 8 otc hours]

---

[1] The applicable minimum wage in Florida at the time.

7

      c. Overtime Hours: $ 1,868.40 [36 weeks x $ 8.65 x 4 ot hrs x 1.5]

      d. Overtime Hours: $ 960.00 [16 weeks x $ 10 x 4 ot hrs x 1.5]

31. In 2022, as a result of Plaintiff's off-the-clock work, he is owed the following wages and overtime:

      a. Regular Hours: $ 960.00 [12 weeks x $ 10 x 8]

      b. Overtime Hours: $ 720.00 [12 weeks x $10 x 4 x 1.5].

32. Accordingly, between 2020 and 2022, Plaintiff is owed for his off-the-clock work the following minimum wages of **$ 6,522.68** plus an equal amount as liquidated damages totaling **$ 13,023.36.**

33. Additionally, Plaintiff is owed for his off-the-clock work the following overtime wages of **$ 4,883.76** plus an equal amount as liquidated damages totaling **$9,767.52.**

34. Notwithstanding the fact that each Defendant had knowledge regarding its obligation to pay the Plaintiff an hourly rate no less than the federal minimum wage, or overtime, Defendants willfully continued to violate Title 29 U.S.C. §§ 206, 207 and the Florida Minimum Wage Act by not paying Plaintiff any type of hourly wage equal to the minimum wage rate as mandated by the FLSA and the FMWA or paying him the correct overtime amount. Moreover, Plaintiff advised Defendants that it was unlawful for them to make deductions from the tipped employee's paychecks to pay the wages of their undocumented workers, but the Plaintiff's complaints fell on deaf ears. In fact, Bianchi told him that he did not care because he had "money and power" and would hire a good lawyer.

35. Such continuing conduct by the Defendants evidences a willful decision by the Defendants and their agents to violate the minimum wage and overtime provisions of the FLSA. At no time did Defendants have reasonable grounds for believing that their acts and/or omissions were not a violation of the FLSA or the FMWA.

36. Prior to filing this action, the Plaintiff exhausted all administrative remedies under the Florida Minimum Wage Act by sending the requisite written notice but was not unable to reach a resolution as the Defendants took the position that they complied with the law and that Plaintiff is not owed a penny. Accordingly, the Defendants refused to pay him the back-wages claimed.

37. Plaintiff has retained the Law Firm of Michael A. Pancier, P.A to represent him in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIMS

### COUNT I

**VIOLATION OF MINIMUM WAGE, OVERTIME, AND TIP THEFT PROVISIONS, OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. §§ 206-207 AND FLORIDA MINIMUM WAGE ACT**

38. Plaintiff realleges and reavers paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. Pursuant to section 6 of the FLSA, Plaintiff was entitled to be paid at the rate of not less than $7.25 per hour for the regular hours that he worked for Defendants.

40. Additionally, pursuant to the FMWA, Plaintiff was entitled to paid at the rate of not less than $ 8.56 per hour in 2020, $ 8.56 and $ 10.00 per hour in 2021 and

$10.00 per hour in 2022. At all times material hereto, Defendants paid Plaintiff at a rate $3.02 per hour below than the applicable minimum wage rate.

41. Additionally, the Plaintiff was required to receive the applicable minimum wage for all hours he worked off the clock and overtime for all hours worked over 40 as a result of the off-the-clock hours he worked.

42. Defendants did not maintain proper time records as required by section 11 of the FLSA as evidenced by their requirement that Plaintiff work off-the-clock.

43. Additionally, pursuant to section 7 of the FLSA, Plaintiff was supposed to be paid overtime at a rate equal to the minimum wage times time and one-half (1.5x). Plaintiff was paid below the legal overtime rate.

44. Defendants actions were willful.

45. Plaintiff was underpaid below the applicable Florida and Federal minimum wage rate due to Defendants' unlawful deductions of Plaintiff's tips by $ 3.02 for all hours that he was paid a sub-minimum wage. Plaintiff was underpaid by 1,040 hours (740 + 300) resulting in an underpayment to Plaintiff of $ 3,140.80 plus an equal amount as liquidated damages totaling **$ 6,281.60.**

46. Additionally, between 2020 and 2022, Plaintiff is owed for his off-the-clock work the following minimum wages of $ 6,522.68 plus an equal amount as liquidated damages totaling **$ 13,023.36.**

47. Additionally, Plaintiff is owed for his off the clock work the following overtime wages of $ 4,883.76 plus an equal amount as liquidated damages totaling **$9,767.52.**

48. Plaintiff is therefore owed **$ 29,072.48** plus any tips that he had stolen by the Defendants.

49. Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered jointly and severally in his favor against Defendants:

a. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the minimum wage and maximum hour provisions of the FLSA and the minimum wage provisions of the FMWA and declaring that the Defendants' policies of deducting tips from the tipped employees to pay the back of the house and management constitutes tip theft under the FLSA;

b. Awarding Plaintiff unpaid minimum wages of $9,663.48 plus an equal amount as liquidated damages totaling **$19,326.96**;

c. Awarding Plaintiff unpaid overtime wages of $ 4,883.76 plus an equal amount as liquidated damages totaling **$9,767.52.**

d. Awarding Plaintiffs reasonable attorney's fees, costs, and expenses of this litigation pursuant to 29 U.S.C. § 216(b) of the FLSA and the Florida Minimum Wage Act;

e. Awarding Plaintiff damages under the FLSA for the unlawful misappropriation of Plaintiff's tips by management;

f. Awarding Plaintiffs post judgment interest; and

g. Ordering any other and further relief that this court may deem just and proper.

## COUNT II

### RETALIATION UNDER SECTION 15(A)(3) OF THE FLSA

50.     Plaintiff realleges and reavers paragraphs 1 through 37 of this Complaint as if fully set forth herein.

51.     On or about April 6, 2022, through his attorney, Plaintiff made a demand to the Defendants pursuant to the FMWA and the FLSA for unpaid minimum wages, tips, and overtime due to the Defendants' aforementioned violations of law.

52.     As a result of the Defendants' receipt of the Plaintiff's demand letters, the Defendants did not provide Plaintiff his final paycheck which was due on April 18, 2022. Plaintiff made several demands to pick up his paycheck but was told that the Defendants' attorneys had the check and that Plaintiff needed to drive 80 miles round trip to Coral Gables, Florida to pick up his check.

53.     Plaintiff, through counsel, then made another written demand for the final paycheck and after a discussion between counsel, the Defendants' attorneys agreed to send the final paycheck to Plaintiff via FedEx.

54.     However, the final paycheck was not a regular paycheck, but a hand written check dated April 20, 2022 which had no breakdown for any deductions, or how the amount was even calculated.

55.     Additionally, after Plaintiff exercised his federally and state protected rights by demanding that Defendants provide him with unpaid overtime and minimum wages, the Defendants further retaliated against him by threatening him with bogus allegations that he gave out over $45,000.00 in free drinks over a two-year period despite the fact that the Defendants had authorized Plaintiff to give drink promotions. In fact,

there was a key on the register reading "Javier Promotions" that would appear on any of the register and POS system so this is not something that was hidden.[2] Moreover, Defendant monitored the registers and the property with security cameras which recorded both video and audio at all times and were well aware of this practice. Further, the irony of the situation is that with this going on for well over two years, it was not until Plaintiff's exercise of his rights that the Defendants suddenly have an issue with something they previously approved in what is clearly a blatant attempt to intimidate the Plaintiff from pursuing his action under the FLSA and FMWA.

56. Defendants' actions violate section 11 of the FLSA as well as section 15(a)(3) of the FLSA as they are retaliatory for Plaintiff's exercise of his federally protected rights under the FLSA.

57. As a direct result of Defendant's actions, Plaintiff has been damaged and has been deprived of his full compensation due him for his last pay period.

58. Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered jointly and severally in his favor against Defendants:

e. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the anti-retaliation provisions of the FLSA;

---

[2] Upon information and belief, the "Javier Promotion" key has since been removed from the Register/POS System, not surprisingly, however, all of the prior promotions would show up on the computer system.

  b. Awarding Plaintiffs reasonable attorney's fees, costs, and expenses of this litigation pursuant to 29 U.S.C. § 216(b) of the FLSA and the Florida Minimum Wage Act;

  c. Awarding Plaintiff damages under the FLSA for the unlawful misappropriation of Plaintiff's tips by management;

  d. Awarding Plaintiff compensatory damages;

  e. Awarding Plaintiffs post judgment interest; and

  f. Ordering any other and further relief that this court may deem just and proper.

Date: May 9, 2022

    Respectfully submitted,

    Law Offices of Michael A. Pancier, P.A.,
    **Attorneys for Plaintiff**
    9000 Sheridan Street, Suite 93
    Pembroke Pines, FL 33024
    TEL: (954) 862-2217
    FAX: (954) 862-2287

     /s/ Michael A. Pancier, Esq.
    Michael A. Pancier, Esq.
    Fla. Bar No. 958484